UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITY OF DULUTH,
    Plaintiff

v.

NATIONAL INDIAN GAMING
COMMISSION, *et al.*,
    Defendants

Civil Action No. 13-246 (CKK)

**MEMORANDUM OPINION**
(March 31, 2015)

Plaintiff City of Duluth, Minnesota, brings this action challenging a Notice of Violation ("NOV") that the National Indian Gaming Commission (the "Commission") issued to the Fond du Lac Band of Lake Superior Chippewa (the "Band") with respect to Band's gaming establishment in the City of Duluth. This action is the latest step in a long saga pertaining to the relationship of the Band and the City of Duluth with respect to gaming, including proceedings in federal court in Minnesota, before the National Indian Gaming Commission, and, now, before this Court as well. In a nutshell, in the NOV, issued July 12, 2011, the National Indian Gaming Commission informed the Band that the 1994 Agreement between the Band and the City of Duluth violated the requirement that the Band have the "sole proprietary interest" in the gaming activity pursuant to the Indian Gaming Regulatory Act of 1988. The City of Duluth filed this action pursuant to the Administrative Procedure Act, claiming that the NOV, first, was arbitrary, capricious or otherwise not in accordance with law, and, second, exceeded Defendants' authority under the Indian Gaming Regulatory Act. The City of Duluth requests that the NOV be set aside and requests related declaratory and injunctive relief. The Federal Defendants—the Commission and Jonodev Chaudhuri, in his official capacity as Acting Chairman of the National Indian

1

Gaming Commission[1]—argue that the NOV neither was arbitrary or capricious nor exceeded the scope of the Commission's authority. Before the Court are Plaintiff's [24] Motion for Summary Judgment and the Federal Defendants' [26] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court DENIES Plaintiff's [24] Motion for Summary Judgment and GRANTS the Federal Defendants' [26] Cross-Motion for Summary Judgment. The Court concludes that the NOV was not arbitrary or capricious; that it did not exceed the scope of the Commission's authority; and that none of the other legal infirmities that Plaintiff identifies are grounds for setting aside the NOV. Accordingly, this case is dismissed in its entirety.

## I. BACKGROUND

The history underlying this action is long and convoluted. Reciting this long history in full is not necessary for the resolution of the issues before the Court today. The facts pertinent to this action have been presented at length by this Court, *see City of Duluth v. National Indian Gaming Commission*, 7 F. Supp. 3d 30 (D.D.C. 2013), and in the related litigation occurring in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Jonodev Chaudhuri has been automatically substituted for Tracie L. Stevens, whom the parties' pleadings name as Defendant.

[2] The Court's consideration has focused on the following documents:
- Pl.'s Complaint ("Compl."), ECF No. 1;
- Pl.'s Mem. of Law Supp. Its Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 25;
- United States' Opp'n to Pl.'s Mot. for Summary Judgment & Cross-Motion for Summary Judgment ("Defs.' Cross-Mot."), ECF No. 26;
- Pl. City of Duluth's Mem. in Opp'n to Defs.' Cross-Mot. for Summary Judgment & Reply to Defs.' Opp'n to Pl.'s Mot. for Summary Judgment ("Pl.'s Reply"), ECF. No. 30;
- United States' Reply to Pl.'s Opp'n to Defs.' Cross-Mot. ("Defs.' Reply"), ECF No. 33; and
- Mem. of Amicus Curiae Fond Du Lac Band of Lake Superior Chippewa ("Amicus Br."), ECF No. 29.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

the District of Minnesota and on appeal at the Eighth Circuit Court of Appeals, *see City of Duluth v. Fond du Lac Band of Lake Superior Chippewa* ("*Duluth I*"), 702 F.3d 1147 (8th Cir. 2013); *City of Duluth v. Fond Du Lac Band of Lake Superior Chippewa* ("*Duluth II*"), 977 F. Supp. 2d 944 (D. Minn. 2013). The Court recites only the principal facts pertaining to the issues raised in the pending motions, reserving further presentation of the facts for the discussion of the individual issues below.

The Band and the City of Duluth first entered into an agreement to establish a gambling casino in the city in 1986. AR000035. Two years later, Congress passed the Indian Gaming Regulatory Act ("IGRA"), which required that "an Indian tribe have the 'sole proprietary interest' in any Indian gaming activity authorized by the act, as well as the exclusive control and responsibility for it." *Duluth I*, 702 F.3d at 1150 (quoting 25 U.S.C. § 2710(b)(2)(A)). After various proceedings and negotiations involving the City of Duluth, the Band, and the Commission, the District Court for the District of Minnesota "issued an order on June 22, 1994 incorporating the detailed stipulation of the parties into a consent decree which also provided that the NIGC had concluded that 'these agreements are in conformance with' IGRA.'" *Id.* at 1151. The Court refers to that agreement between the Band and the City of Duluth as the 1994 Agreement. The initial term of the 1994 Agreement was 17 years, ending in 2011, with an automatic renewal for a term of 25 additional years, ending in 2036. AR000039. Among other provisions, the 1994 Agreement requires the payment of annual rent by the Band to the City. AR000047. From 1994 until 2009, the parties performed under the agreement, including the Band's payment of rent to the City. AR000059. Beginning in August 2009, the Band ceased making rent payments to the City, *id.*, setting off the chain of events that lead to the action

currently before this Court, as well as related proceedings before the District of Minnesota and the Eighth Circuit.

In 2011, the Commission issued the NOV, concluding that City of Duluth "possesse[d] a proprietary interest in the gaming operation and responsibility for the operation in violation of IGRA [the Indian Gaming Regulatory Act], [Commission] regulations, and the Fond du Lac Gaming Ordinance." AR000050. In order to correct the violation, the NOV stated that the "Band must cease performance under the 1994 Agreements of those provisions identified in this NOV as violating IGRA. This applies to the entire 42 year term of the 1994 Agreements." *Id.* Although the NOV stated that the violation may result in civil penalties, *see id.*, the record does not reflect that the Commission took any further steps to impose such penalties or to take any other enforcement actions. The City of Duluth challenges the NOV in this action.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record.... Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack,* 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar* (*Midwest I*), 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). The reviewing court "is not to substitute its judgment for that of the agency." *Id.* Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

### III. DISCUSSION

Plaintiff argues that the Commission exceeded its statutory authority in issuing the NOV and that the NOV was arbitrary and capricious. Defendants disagree and respond that the NOV was proper. The relationships among Plaintiff's several arguments, as stated in the City's Motion for Summary Judgment and in the City's Opposition to the Federal Defendants' Cross-Motion for Summary Judgment, are less than wholly clear, and the Court addresses each argument as it best understands them. The Court ultimately concludes that there is no basis for vacating the NOV or granting any other relief with respect to the NOV.[3]

---

[3] In the Statement of Facts attached to Plaintiff's Motion for Summary Judgment, Plaintiff asserts that the Commission improperly engaged in *ex parte* communications with the Band prior to

**A. The Commission Did Not Exceed Its Authority in Issuing the NOV**

Plaintiff first argues that the National Indian Gaming Commission exceeded its authority pursuant to the Indian Gaming Regulatory Act by issuing the NOV.[4] Defendants argue they had the authority to issue the NOV under 25 U.S.C. § 2713, which establishes the Commission's enforcement authority. The Court concludes that the NOV was properly issued pursuant to section 2713 and that no other provisions of the Act bar the Commission from using its enforcement authority as it did in this case.[5]

In Plaintiff's Motion for Summary Judgment, Plaintiff argues that the Commission does not have the authority to issue the NOV under section 2711 of the Act, which pertains to management contracts, or under section 2712 of the Act, which pertains to ordinances and other contracts. However, the Federal Defendants do not rely on these sections as the legal basis for

---

issuing the NOV. *See, e.g.*, Pl.'s Statement of Facts ¶¶ 71-71. However, Plaintiff does not present any arguments with respect to the validity of the NOV based on those allegedly improper *ex parte* communications. Accordingly, the Court considers this argument forfeited. The Court notes also that Plaintiff has not identified any legal basis for the Court to conclude that *ex parte* communications between the National Indian Gaming Commission and the subject of an enforcement action by the Commission would be the basis for invalidating the NOV.

[4] In the Complaint, Plaintiff claims that the provisions of the Indian Gaming Regulatory Act "do not grant to Defendants the authority to overturn a final judgment of the court through administrative action absent a change in statutory or regulatory law." Compl. ¶ 59. Plaintiff does not appear to press this argument in the summary judgment briefing, and the Court considers it forfeited. In any event, as the Eighth Circuit Court of Appeals noted in addressing this case, the Commission "does not have the authority to punish a party for obeying a court order," *City of Duluth v. Fond Du Lac Band*, 702 F.3d at 1155, and it has not attempted to do so in this case. In other words, the Commission cannot relieve the parties of their obligations under a binding consent decree issued by the District Court for the District of Minnesota. While the Commission has "the power to change its position," *id.,* whether to relieve the parties of the obligations under the consent decree remains in the hands of that District Court.

[5] Plaintiff argues that the Commission is not due *Chevron* deference regarding the scope of its enforcement authority. The Court agrees that the statutory provision supporting the Commission's enforcement authority is unambiguous and, therefore, no deference is due. However, the Court parts ways with Plaintiff because the Court concludes, as detailed below, that the scope of the enforcement authority established by the statute unambiguously encompasses the authority to issue the NOV.

the NOV. Instead, they point to section 2713, which provides the Commission its enforcement authority. Indeed, the NOV itself states that it is issued pursuant to section 2713. *See* AR000035 ("Under IGRA and NIGC Regulations, the Chairwoman may issue a NOV to any person for violation of any provision of the IGRA, NIGC regulations, or an approved tribal gaming ordinance or resolution") (citing 25 U.S.C. § 2713(a) and 25 C.F.R. § 573.3(a)). Therefore, Plaintiff's arguments about other sections of the Indian Gaming Regulatory Act are only relevant insofar as those sections would prevent the Commission from exercising its authority under section 2713. The Court first looks to the text of section 2713 and concludes that it allows the Commission to exercise its authority through the issuance of the NOV; the Court next looks to the other sections on which Plaintiff relies and concludes that they do not preclude the Commission from exercising the enforcement authority provided by section 2713.

Pursuant to section 2713 of the Indian Gaming Regulatory Act, the chair of the National Indian Gaming Commission has the

> authority to levy and collect appropriate civil fines, not to exceed $25,000 per violation, against the tribal operator of an Indian game or a management contractor engaged in gaming for any violation of any provision of this chapter, any regulation prescribed by the Commission pursuant to this chapter, or tribal regulations, ordinances, or resolutions approved under section 2710 or 2712 of this title.

25 U.S.C. § 2713(a)(1). The Act further requires that, when the Commission has "reasons to believe" that there are ongoing activities that may result in a fine or other enforcement action, the Commission must provide the person engaging in the violation notice, as follows:

> The Commission shall provide such tribal operator or management contractor with a written complaint stating the acts or omissions which form the basis for such belief and the action or choice of action being considered by the Commission. The allegation shall be set forth in common and concise language and must specify the statutory or regulatory provisions alleged to have been violated, but may not consist merely of allegations stated in statutory or regulatory language.

7

*Id.* § 2713(a)(3). In issuing the NOV to the Band, the Commission followed the steps outlined by statute. It informed the Band which activities were contrary to the Act, *see* AR000047-50; informed the Band that it was required to stop performing under the 1994 Agreement with respect to the provisions that violated the Act, *see* AR000050; and informed the Band that further violations could result in fines or in temporary closure of the gaming facility, *see* AR000051. The NOV referenced the relevant statutes and regulations, enumerated the facts underpinning the violation, and did so while using common language understandable to those not immersed in the particular regulatory scheme. The Court concludes that, in issuing the NOV, the Commission was acting within the scope of the enforcement authority provided to it by section 2713.

Plaintiff also argues that, because the Commission had approved the 1994 Agreement pursuant to section 2712 review at the time that agreement was entered, the Commission was precluded from exercising its enforcement authority seventeen years later in issuing the 2011 NOV. While the parties dispute the nature of the Commission's actions in 1994, the Court need not resolve that dispute. Regardless of the statutory category in which those actions fell—whether they were enforcement actions or otherwise—those action did not bar the Commission from engaging in an enforcement action in 2011. Plaintiff points to no source of authority that would foreclose the agency's 2011 enforcement action based solely on the previous actions it took. Moreover, section 2713 itself suggests that there are no time limits to the Commission's authority to pursue an enforcement action. *See* 25 U.S.C. § 2713(a)(3) ("*Whenever* the Commission has reason to believe that" a person is engaging in activities that could result in fine, notice to that person is required) (emphasis added). Ultimately, the Commission has wide discretion about whether or not to take an enforcement action, as well as the timing of such actions. *See Bd. of Comm'rs of Cherokee Cnty., Kan. v. Jewel*, 956 F. Supp. 2d 116, 124 (D.D.C.

2013). In sum, the Court concludes that the issuance of the NOV in 2011 was within the scope of the Commission's enforcement authority.

**B.  Commission's Interpretation of the "Sole Proprietary Interest" Is Due Deference**

Plaintiff only halfheartedly challenges the underlying substantive interpretation of the "sole proprietary interest" requirement. In Plaintiff's Motion for Summary Judgment, Plaintiff argues that the Commission is not entitled to *Chevron* deference with respect to the interpretation of the "sole proprietary interest" requirement embodied in the NOV. In a single sentence, they assert that the Commission "is only entitled to *Skidmore* deference and here, because it is not persuasive, it should be rejected." Pl.'s Mot. at 24. Plaintiff never argues that, if *Chevron* applies, the Commission's interpretation is not permissible. Nor do they expand on the *Skidmore* argument to explain why the Commission's interpretation is not persuasive. The Federal Defendants argue that they are entitled to *Chevron* deference and that their interpretation of "sole proprietary interest" was reasonable. The Court agrees with the Federal Defendants.

The Indian Gaming Regulatory Act requires that "an Indian tribe have the 'sole proprietary interest' in any Indian gaming activity authorized by the act, as well as the exclusive control and responsibility for it." *City of Duluth I*, 702 F.3d at 1150 (citing 25 U.S.C. § 2710(b)(2)(A)). To interpret this statute, the Court applies the framework established in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). The Court first asks "whether Congress has directly spoken to the precise question at issue, in which case we must give effect to the unambiguously expressed intent of Congress." *Deppenbrook v. Pension Benefit Guar. Corp*, 778 F.3d 166, 172 (D.C. Cir. 2015) (citation omitted). "If the statute is silent or ambiguous with respect to the specific issue, however, we move to the second step and defer to the agency's interpretation as long as it is based on a permissible construction of the statute." *Id.* "To trigger

deference," an agency must show that Congress has "'deleted authority to the agency to make rules carrying the force of law'" and that "'the agency interpretations claiming deference was promulgated in the exercise of that authority.'" *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136 (D.C. Cir. 2014) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)).

The primary argument that Plaintiff presents pertaining to the interpretation of the phrase "sole proprietary interest" is that the Commission is not due deference for the interpretation contained in the NOV because it is not promulgated in a regulation and that, like an opinion letter, it is "'entitled to respect' … but only to the extent that [it] has the 'power to persuade.'"[6] *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)). The Court disagrees. The Commission's interpretation embodied in the NOV of violation is due deference because it carries "the force of law." *Mead*, 533 U.S. at 226. The NOV itself states that the "Band must cease performance under the 1994 Agreements of those provisions identified in this NOV as violating [the Indian Gaming Regulatory Act]." AR000050. The Commission is empowered to collect civil fines for violations of the Act, *see* 25 U.S.C. §§ 2706(a)(2), 2713, and the NOV states that future violations by the Band may result in civil fines, *see* AR000051. The NOV includes careful analysis of the "sole proprietary interest" requirement and shows how that requirement fits in to the larger scheme established by the Indian Gaming Regulatory Act. *See* AR000033-51. Moreover, the NOV built on a foundation of

---

[6] Plaintiff does not dispute that the National Indian Gaming Commission is charged with regulating gaming on Indian lands and that it is empowered to promulgate regulations pursuant to that authority. Indeed, the statute makes that authority clear. *See City of Duluth I*, 702 F.3d at 1150; 25 U.S.C. § 2706(b)(10) (Commission "shall promulgate such regulations and guidelines as it deems appropriate to implement the provisions of this chapter"). Plaintiff also does not dispute that the relevant language of the statute is ambiguous.

previous legal opinions issued by the Commission regarding gaming operations of other Tribal Nations. *See* AR000044-45. As such, "the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue." *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).[7]

Having established that the Commission is due deference for the interpretation contained in the NOV, in the *Chevron* framework, the next question is whether that interpretation is reasonable. However, Plaintiff does not argue that the Commission's interpretation of the statutory phrase in question is not "reasonable."[8] Accordingly, the Court concludes that Plaintiff has forfeited any such argument. Moreover, while Plaintiff asserts that the Commission's interpretation is not "persuasive," *see* Pl.'s Mot. at 24, Plaintiff does not explain why the Commission's interpretation is not, in fact, persuasive. In sum, nowhere does Plaintiff present an argument why the Commission's interpretation of "sole proprietary interest" should be reversed by this Court on the merits.

---

[7] Plaintiff also argues that the interpretation is not due deference because the issuance of the NOV was outside the scope of the authority of the Commission in the first instance. However, because the Court concludes, as detailed in the remainder of the Memorandum Opinion, that the NOV is within the Commission's authority, this argument fails as well.

[8] Perhaps Plaintiff chooses not to press that argument because even a cursory look at the statute and the Commission's interpretation suggests that, on the merits, it is reasonable. The Commission interprets the "sole proprietary interest" requirement to involve the analysis of three primary factors: the length (or term) of the relationship between a Tribe and a third party, the amount of revenue paid to the third party, and the third party's right of control over the gaming activity. AR000045. Applying those factors to the Band's agreement with the City of Duluth, the Commission reasonably concluded that the Agreement violates the "sole proprietary interest" requirement of the statute. *See* AR000050.

Insofar as Plaintiff argues that the NOV is arbitrary and capricious because it represented a change in the Commission's interpretation, the Court disagrees. The Commission is not "estopped from changing a view [it] believes to have been grounded upon a mistaken legal interpretation." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993). The agency is not subject to a heightened standard of review when changing its interpretation. *See F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 514 (2009). The agency must simply "display awareness that it *is* changing position," and it must "show that there are good reasons for the new policy." *Id.* at 515. The Commission has more than satisfied this standard in this case. In the NOV, the Commission described in detail the prior proceedings related to the current action, including the substance and context of the agency's earlier position with regard to the "sole proprietary interest" requirement. AR000033-37. By stating that "this notice of violation (NOV) is not issued lightly," the Commission demonstrated that it treated the change of position with the seriousness appropriate for such a course of action. AR000033. Finally, the Commission thoroughly described its current interpretation of the statutory language and provided a detailed explanation of its application of that interpretation to the facts in question. AR000043-50. Accordingly, the Commission has adequately explained the new position that it is taking, and the Court finds no basis for disturbing the Commission's interpretation and application of the "sole proprietary interest" requirement.

## C. The NOV is Not Infected with Impermissible Retroactivity

Finally, Plaintiff argues that the NOV is impermissibly retroactive and, therefore, it must be set aside. However, even if the NOV did have some effects that were impermissibly retroactive, that impermissible retroactivity would not infect other applications of the NOV that do not suffer from this same problem; the existence of some impermissible effects would not be

a reason to disturb the NOV with respect to effects that are prospective or effects that are retroactive, but not impermissibly so. Accordingly, the question is whether NOV purports to have retroactive effects and, if it does, whether it should be given retroactive effect.

The D.C. Circuit Court of Appeals has recognized that, "[e]ven though adjudication is by its nature retroactive, … 'deny[ing] retroactive effect to a rule announced in an agency adjudication' may be proper where the adjudication 'substitut[es] ... new law for old law that was reasonably clear' and where doing so is 'necessary ... to protect the settled expectations of those who had relied on the preexisting rule.'" [9] *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 922 (D.C. Cir. 2013) (quoting *Williams Natural Gas Co. v. FERC,* 3 F.3d 1544, 1554 (D.C. Cir. 1993)).

For this analysis, the threshold question is whether the NOV purports to have any retroactive effects. Retroactive effect "typically refer[s] to an order or penalty with economic consequences, not retroactive application of the rule itself." *Id.* Because the relationship between the parties regarding the gaming facility is governed by the Consent Decree entered in 1994 by the District Court for the District of Minnesota, relief from that Consent Decree would be necessary in order for the NOV to have any effect whatsoever during the period governed by that court order. As the Eighth Circuit Court of Appeals stated regarding this case, "[w]hile the NIGC had the power to change its position, it does not have the authority to punish a party for obeying a court order." *Duluth I*, 702 F.3d at 1155. Accordingly, without relief from the Consent Decree, the NOV can have no retroactive effect in the first instance.

---

[9] Notwithstanding Plaintiff's contentions, the analytical framework pertaining to retroactive rules stated in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988), is inapplicable in this case because this case does not concern a regulation—retroactive or not.

To determine whether the NOV even purports to have retroactive effects, it is necessary to review each period to which the NOV is applicable. From the time the parties entered the Agreement in 1994 until 2009, the Band and the City of Duluth performed under the agreement, and the Band paid the City the rent due pursuant to that agreement. With respect to this period, the District Court for the District of Minnesota denied the retrospective relief that the Band sought—recovering the rent that it had already paid to the City of Duluth—and the Band did not appeal that ruling. *See Duluth I*, 702 F.3d at 1152. Accordingly, the NOV had no retroactive effects with respect to years from 1994 to 2009. Beginning in 2009, the Band withheld all of the rent due to the City as a result of its claim that the 1994 Agreement violated the Indian Gaming Regulatory Act. The Band continued to refrain from paying rent until 2011 when—after various proceedings in the District of Minnesota and before the Commission—the Commission issued the NOV. With respect to this two-year period, the District Court for the District of Minnesota also denied the Band retrospective relief—after conducting a thorough analysis on remand from the Eighth Circuit.[10] *See Duluth II*, 977 F. Supp. 2d at 956. Because no retrospective relief was granted with respect to this period, either, the NOV had no retroactive effects with respect to any of the years before the NOV was issued in 2011.

With respect to the period beginning in 2011 and running until the termination of the agreement in 2036, the district court granted relief, and the Eighth Circuit Court of Appeals affirmed. *City of Duluth I*, 702 F.3d at 1153-54 (the NOV "provides ample support for the district court's decision to grant prospective relief from continued enforcement of the 1994 consent decree into the 2011 to 2036 period since continued execution of the agreement would be 'no longer equitable.'"). The Court agrees with the Eighth Circuit that this relief was *prospective* in

---

[10] That determination is currently on appeal to the Eighth Circuit once again.

14

nature. Giving effect to the 2011 NOV for the period between 2011 and 2036 only has "economic consequences" going forward and, therefore, does not qualify as a retroactive effect. *See Catholic Health Initiatives*, 718 F.3d at 22. Even if this relief "impaired the future value of [a] past bargain[]," that is not a basis for considering the NOV impermissibly retroactive. *National Cable & Telecommunications Association v. FCC*, 567 F.3d 659, 670 (D.C. Cir. 2009). Any frustrated expectations on the part of the City of Duluth do not transform the prospective relief granted by the District Court into impermissible retrospective relief. *See id.* In sum, the Court concludes that the NOV has had no retroactive effects and, therefore, it is not an impermissible retroactive agency action.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Federal Defendants' [26] Cross-Motion for Summary Judgment and DENIES Plaintiff's [24] Motion for Summary Judgment. The Court concludes that the NOV was not arbitrary or capricious; that it did not exceed the scope of the Commission's authority; and that none of the other legal infirmities that Plaintiff identifies are grounds for setting aside the NOV. This action is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 31, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
